joint tort-feasors. In that case, the release could not be properly pleaded by this defendant.

Judgment reversed, and new trial ordered, with costs to appellant to abide the event.

GIEGERICH, J., concurs. LEHMAN, J., concurs in result.

---

### BALL et al. v. SHEPHARD et al.

(Supreme Court, Appellate Division, First Department. December 31, 1909.)

1. MONEY RECEIVED (§ 6*)—RIGHT OF ACTION—MISTAKE.

V. had previously purchased certain kinds of bonds from defendants for his own customers; the manner of purchasing being that he would obtain a net price from defendants, who would bill the bonds to the purchaser at the price V. was to receive and then pay V. the difference between it and the net price at which he had purchased. On the occasion in question, V. requested defendants to deliver certain bonds to plaintiffs, stating that they would pay for them, and when the bonds were delivered to V., at plaintiffs' place of business, he told plaintiffs that the bonds were sold to another, who was an old customer, and that his check for them would be there in an hour, and asked plaintiffs to pay defendants for them, and plaintiffs made a draft for the amount which was given to defendants by V. V. had not in fact sold the bonds, and plaintiffs, upon learning that fact, informed defendants, demanding back their draft, which defendants refused to surrender. *Held*, that the transaction was a sale of the bonds to V., and not to plaintiffs, and that plaintiffs could recover from defendants the amount of their draft as for money received by defendants under a mistake of fact, induced by V.'s misrepresentation; defendants not having changed their position after being notified of the mistake and after plaintiffs' demand for the draft.

[Ed. Note.—For other cases, see Money Received, Dec. Dig. § 6.*]

2. MONEY RECEIVED (§ 1*)—GROUNDS OF OBLIGATION.

An action for money had and received is based upon the equitable principle that an action at law will lie to recover back money received which in equity and good conscience the person receiving it should not retain, after learning of the facts making it inequitable to do so.

[Ed. Note.—For other cases, see Money Received, Cent. Dig. § 1; Dec. Dig. § 1.*]

Houghton and Scott, JJ., dissenting.

Appeal from Trial Term, New York County.

Action by Charles E. Ball and others, as copartners, composing the firm of Ball & Whicher, against Edward D. Shephard and another, composing the firm of E. D. Shephard & Co. From a judgment for plaintiffs, defendants appeal. Affirmed.

Argued before INGRAHAM, McLAUGHLIN, HOUGHTON, CLARKE, and SCOTT, JJ.

L. Laflin Kellogg, for appellants.

H. Aaron, for respondents.

INGRAHAM, J. The action is brought to recover the sum of $24,-906.25, paid by the plaintiff to the defendant as an action for money had and received. To intelligently present the question, it is important

---

that the relation of the parties to each other and to one Valentine, out of whose transactions the controversy arose, should be stated.

It seems that Valentine was a dealer in bonds, stocks, and other securities. He had been in the employ of the defendant, but about four months before July 28, 1908, he had been engaged by the plaintiff to bring in stock business, and in June plaintiff had paid him a salary of $50 a week. Valentine, however, retained his outside bond business, and during the time that he had been in the employ of the plaintiff he had carried on transactions in bond and other unlisted securities on his own account, sometimes clearing purchases and sales of such securities through the plaintiff, and sometimes through other houses engaged in that business—the plaintiff was what is known as a stock exchange house; that is, connected with the New York Stock Exchange. Prior to this time the defendant had promoted a company called the "Yankee Fuel Company." This company made a bond issue of $1,500,000, and at this time about $1,000,000 of these bonds was unsold. On July 28, 1908, Valentine went to the defendant's place of business and made an offer for $25,000 of Yankee Fuel bonds at 90 cents on the dollar. Valentine had before that sold these bonds to his customers and had purchased them from the defendant. The method seems to have been, when Valentine sold the bonds, he obtained a net price from the defendant, when the defendant would bill the bonds to the purchaser, or the brokers who acted for the purchaser, at the price that he was to receive for them, and the defendant would pay him the difference between the net price at which Valentine purchased them and the price at which they had been billed to the purchaser. The defendant accepted this offer of Valentine's. Valentine then requested the defendant to deliver the bonds to the plaintiff, who would pay for them. Valentine then went to Mr. Chinn, one of the plaintiffs, and said to him that he had put through a $25,-000 bond deal. Shortly afterwards the bonds were received from the defendant at the plaintiff's place of business, when Chinn gave orders not to pay for them until he could see Valentine about them. Valentine subsequently came in, when Chinn said to him that there were 25 Yankee Fuel bonds from Shephard & Co. and asked where his money was. Valentine said:

"Why, that is all right, Mr. Chinn. I have sold those bonds to a Mr. Spingarn, of Spingarn Bros. He is an uptown milliner. He owns the building he is in. I have sold him over 200,000 bonds in the past two or three years. In fact, I have sold him 280,000 to be accurate." That there was no use of holding Shephard up for the payment of these bonds, because a certified check would be down there within an hour for those bonds from Mr. Spingarn.

Whereupon Mr. Chinn told his cashier to pay for the bonds. The plaintiff's check was then drawn and was delivered to the defendant's messenger. This check was delivered about 20 minutes of 11 o'clock in the morning, and Valentine stated that he had some arrangement with Mr. Spingarn to send the check down. The Spingarn check not having been received during the day, the plaintiff tried to communicate with Mr. Spingarn, but was unsuccessful until the following morning, when it was ascertained that Spingarn had never purchased these bonds for them and knew nothing about the transaction. The

messenger who delivered these bonds stated that he delivered them to Valentine personally at the plaintiff's place of business and received the plaintiff's check for them from Valentine. The defendant immediately proceeded to have the check certified, and it was at once deposited and paid through the Clearing House on. the same day. As soon as the plaintiff had ascertained that Spingarn had not purchased these bonds on the morning of the 29th, one of the plaintiffs went to the defendant's place of business and saw the manager in charge. He told the manager that these $25,000 worth of bonds that Valentine had sold for the defendant to Spingarn could not be delivered, and demanded back the money. The manager said that the company had been advised that the bonds had been sold, and that a draft was on its way, to which the plaintiff's representative replied, "Then cancel the draft," and the plaintiffs would have nothing to do with the bonds, when the defendant's manager said that he would see what he could do about it. Subsequently, on the same day, the defendant offered to repurchase the bonds at 50 cents on the dollar. The plaintiff tendered the bonds to the defendant and demanded the money, but it was refused; and this action was brought.

At the end of the plaintiff's case the defendant moved to dismiss the complaint, which was denied. The motion was renewed at the end of the whole case, which was again denied, and to that the defendant excepted. The court submitted to the jury two questions: First, whether the plaintiff purchased the bonds from the defendant; and, second, whether it was under any material mistake of fact that the plaintiff was induced to make the payment in question, that before the plaintiff could recover it must show that the payment was made in consequence of a material mistake of fact, finally instructing the jury that:

"If you find that in the transaction in question the plaintiffs were acting in the matter to make a clearance and had not bought the bonds from the defendants, and that in paying the check for $24,906.25 plaintiffs acted under a mistake of fact, namely, in the belief that the bonds had been bought by Spingarn, and that arrangements had been made under which Spingarn had arranged to send a certified check for the same to the plaintiffs, and, in fact, Spingarn had not bought the bonds and had not made such arrangements, and that defendants had not changed their position to their prejudice at the time they received notice of the mistake, then the plaintiffs are entitled to recover; and to which I add otherwise, and if you find to the contrary, the plaintiffs cannot recover in this action against the defendants."

To this charge the defendant excepted. The jury found a verdict for the plaintiff for the full amount claimed, and from that verdict the defendant appealed.

The transaction which resulted in the defendant procuring from the plaintiff this check of nearly $25,000 was based upon the sale of these bonds by the defendant to Valentine. Valentine had been in the habit of making such transactions with the defendant, and in the original transaction there was no mention of the plaintiff's name; the transaction being solely between the defendant and Valentine, and the price at which Valentine bought these bonds was 90 cents on the dollar. After that sale had been made, the defendant was asked to bill the bonds to the plaintiff at 98 cents on the dollar. In pursuance

of that request, the bonds were sent to the plaintiff's place of business, and there delivered to Valentine, and the defendant's representative received from Valentine the plaintiff's check for the amount. This check having been collected on the same day, the defendant paid to Valentine the difference between the amount at which the bonds had been billed to the plaintiff and the amount at which Valentine had purchased the bonds. I think that the transaction on its face was a sale of the bonds to Valentine, and not to the plaintiff, and the testimony is not at all disputed that Valentine had no authority to purchase these bonds on account of the plaintiff and no authority to bind the plaintiff by a transaction of this character. The fact that the bonds were billed to the plaintiff at a different price from that at which Valentine had purchased them, and that Valentine received himself the difference between the price at which the bonds were billed to the plaintiff and the price at which the bonds were sold, was itself notice to the defendant that the transaction was with Valentine personally, and not with the plaintiff; and from this it follows that the defendant had notice of the fact that Valentine was carrying out this transaction on his own account. The jury have found upon undisputed evidence that the plaintiffs were induced to pay their money to the defendants upon the false representation of Valentine that he had effected a sale of the bonds to Mr. Spingarn, and that Mr. Spingarn had agreed that a certified check would be presented for the bonds within an hour. The delivery of the plaintiff's check to Valentine, therefore, was based solely upon this mistake of fact, caused by the misrepresentation of Valentine that the bonds had been sold to Spingarn, and that the check would be there within an hour. The plaintiff's transaction was with Valentine. It could not be disputed for a moment but that, upon the plaintiff discovering the fraud which induced the defendant to act, they could have repudiated the transaction with Valentine, and if Valentine had the plaintiff's money in his possession, the plaintiff could have recovered it back. Valentine, having received the plaintiff's check, turned it over to the defendant to carry out this purchase of the bonds from the defendant, and the defendant, therefore, has received from Valentine the plaintiff's money which Valentine had procured by these misrepresentations and a mistake of fact on the plaintiff's part induced by such misrepresentations.

Assuming that the defendant acted in good faith, and that, so far as they acted upon the situation as it appeared to them on this 28th day of July, the day that the money was delivered, they would be protected, it seems to me that they were not entitled to hold the plaintiff's money as against the plaintiff's demand if nothing had happened to impose any liability upon the defendant, or if their position had not been changed before notice of the mistake was given and a demand made to cancel the transaction; but it is not pretended that the defendants had changed their position before the morning of the 29th day of July, when they were notified of the mistake and the demand for the repayment of the money. They still held the plaintiff's money in their possession, and all that the defendants claimed was that they had notified the corporation that the bonds had been sold, but that no money had been paid to the corporation and no obligation, so far as

appears, assumed by it in consequence of the sale. It seems to me that a case is made out for a recovery for money had and received based upon the money having been paid to the defendants upon a mistake of fact induced by the misrepresentation of Valentine, who was an independent purchaser of the bonds from the defendants.

It is claimed by the defendant that this action cannot be maintained upon the ground that the mistake was solely a mistake of the plaintiff, and that the defendant, not being guilty of any fraud and knowing nothing of the plaintiff's mistake, is entitled to hold the plaintiff's money. I do not think this position is sound. The defendants actually received the check representing this money from Valentine, to carry out the contract that they had made with Valentine. As between the plaintiff and Valentine there was a mutual mistake of fact, or a mistake on the plaintiff's part and fraud on Valentine's part such as to justify a rescission of the transaction and a recovery from Valentine of the money that he received. As between the plaintiff and the defendant, the defendant can claim no better title to the money than Valentine, from whom the defendant received it; and it is clear from the evidence that the method of obtaining payment of the bonds was that agreed to between Valentine and the defendant for their own purposes and to carry out the transaction as between themselves. The plaintiffs had no possible interest in the transaction and merely allowed themselves to be used as a method by which Valentine could carry out his purchase of the bonds. They were induced to part with their money by the misrepresentations of Valentine, and I think it would be a violation of the principles upon which this action for money had and received was based to allow the person who had acquired the money from Valentine to retain it. He had no title to it or right to hold it as against the true owner of the money who was entitled to it. The action for money had and received, although an action at law, is based upon equitable principles that, where a person has received money which in equity and good conscience he is not justified in retaining, an action at law will lie to recover it back. While a person receiving money under such circumstances is entitled to be protected against any obligations that he has incurred or actual payments made based upon its receipt before notice of the facts which make it inequitable for the receiver to hold it, he is bound to repay it to the true owner when he still retains it in his possession when notified of the facts which make it inequitable for him to retain it.

A line of cases relied on by the appellant, of which Justh v. Nat. Bank of Commonwealth, 56 N. Y. 478, is an example, does not apply. That decision, and the cases that follow it, are based upon the rule that, in the absence of trust or agency, "it is only to the extent of the interest remaining in the party committing the fraud that the money can be followed as against an innocent party having a lawful title founded upon consideration; and that, if it has been paid in the ordinary course of business, either upon a new consideration or for an existing debt, the right of the party to follow the money is gone." It seems to me that the distinction between those cases and this is that the defendants and Valentine, for their own purposes, adopted this method of carrying out the transactions between them. By Valen-

tine's fraud the plaintiffs were induced to give Valentine a check for the bonds, which, as a part of the transaction, were turned over to the defendants. Here, the whole transaction itself was permeated by Valentine's fraud, and, although the defendants had no knowledge of it, they were chargeable as between themselves and the plaintiffs with the fraud by which Valentine induced the plaintiffs to take part in the transaction.

In Lawrence v. American Nat. Bank, 54 N. Y. 432, the plaintiff made up a statement of their accounts with Post, which showed that a balance was due him exceeding $10,000, and this sum was paid to the defendants as his assignee. When they made this statement, by mistake, they omitted to charge Post with $5,000 which they had loaned him, and hence they overpaid the defendant the amount of this sum with interest. This mistake was unknown to them, and was manifestly unknown to the defendant; but it was held that the mistake furnished a good ground of recovery. It was there stated:

"It is the fact that one by mistake unintentionally pays money to another to which the latter is not entitled from the former, which gives the right of action, and the fact that the mistake occurs through negligence does not give the payee any better or the payer any worse title to the money."

It follows that the judgment was right and should be affirmed.

McLAUGHLIN and CLARKE, JJ., concur.

HOUGHTON, J. I dissent. The complaint simply alleges that the plaintiffs made a "mistake of fact" in paying to the defendants $24,-906.25 for the 25 Yankee Fuel Company bonds delivered by the defendants to them. No mutual mistake is alleged, and no mistake on the part of the plaintiffs coupled with fraud on the part of the defendants is pleaded, and therefore the plaintiffs are in no position to sustain their judgment on the ground that there was mistake on their part and fraud on the part of the defendants. The plaintiffs chose their allegation, and the court charged that they must recover, if they recovered at all, under the allegation of the complaint, and on the ground that there was a material mistake of fact on the part of the plaintiffs only. In the course of the defendants' requests, "fraud and collusion" was referred to, and the court replied that there was no issue of fraud, and that the action was predicated only upon a material mistake of fact on the part of plaintiffs. Such being the allegation and course of trial of the action, the judgment must be tested accordingly.

Valentine was in the employ of the plaintiffs as outside stockman; but his employment gave him the right, as testified to by one of the plaintiffs, to engage in outside bond business on his own account. He had formerly been in the employ of the defendants and had sold Yankee Fuel Company bonds, the issue of which defendants were placing on the market. Under his employment by the plaintiffs, if he could make anything for himself in the sale of these or any other bonds, he had the right to retain for himself whatever compensation he might receive. He negotiated with the defendants to purchase 25 of the bonds at 90, and told them to bill them to the plaintiffs at

98; the defendants to pay him the difference as his commission. The defendants did bill to the plaintiffs 25 of the bonds at 98 and sent them by a messenger to the plaintiffs, with direction to collect on delivery. Valentine was present and told the plaintiffs that he had sold these bonds to a man by the name of Spingarn, who was responsible, and who would pay for them immediately. The plaintiffs hesitated about giving their check to the defendants for the bonds until they had received the check of Spingarn, but on Valentine's assurance that it was all right they did give their check to the defendants. Valentine deceived the plaintiffs, and Spingarn had not agreed to purchase and would not take them. The bonds were therefore left on the plaintiffs' hands, and the defendants refused to take them back and repay the money. Valentine applied immediately to the defendants for his commissions, the difference between 90 and 98, and they paid to him $2,400, and claimed to have passed the balance on to the Yankee Fuel Company. Of course, there was fraud on the part of Valentine, and possibly under appropriate allegations the plaintiffs might be able to show that the defendants participated in it. There is no proof, and could be none under the allegations of the complaint and rulings of the court, that the defendants knew of Valentine's representations to the plaintiffs. Nor is there any proof, so far as defendants are concerned, that the plaintiffs were acting as a mere clearing house in accepting and paying for the bonds. The defendants might have thought that the plaintiffs were not buying; but there is no evidence that they knew to whom Valentine was to sell. So far as disclosed, all that the defendants knew was that the bonds were to be delivered to the plaintiffs, and that the money for them was to be paid on their delivery.

The only mistake the plaintiffs made was in relying on Valentine's representations and in paying for the bonds before they received the check of his alleged customer. Valentine was not acting as agent for the defendants as sellers, nor for the plaintiffs as buyers. He was simply carrying on his individual bond business, which under his employment with the plaintiffs he had a right to do. If Spingarn had taken the bonds and repaid plaintiffs, they could not have complained because of Valentine's commissions, for they belonged to him. The fact that they acted under a mistake in taking his word and in believing his representations that he had sold the bonds, and that the purchaser would immediately pay for them, gives them no right to relief from such mistake as against these defendants.

The plaintiffs rely on Hathaway v. County of Delaware, 185 N. Y. 368, 78 N. E. 153, 13 L. R. A. (N. S.) 273, 113 Am. St. Rep. 909, Sharkey v. Mansfield, 90 N. Y. 227, 43 Am. Rep. 161, Lawrence v. Amer. Nat. Bank, 54 N. Y. 433, and kindred cases, which hold that, when one party pays money to another to which he is not entitled, he may recover it back, although the mistake was not mutual and no fraud was perpetrated. It is true that an action lies for the recovery of money so paid under certain circumstances. In all of the cases so holding, overpayment or a wrong payment was made through error in assuming the amount was due when it was not, or, as in the Hathaway Case, in paying in reliance upon a forged instrument which was

repudiated because it was not genuine, and the mistake occurred in the dealings between the parties themselves.

In the present case the mistake was not between the plaintiffs and the defendants, but between the plaintiffs and Valentine and in taking his word. There could be no security in dealings with respect to stocks and bonds if they could be delivered and paid for on the supposition that a customer stood ready to repurchase, if, on the customer failing, the money could be recovered back on the ground of mistaken judgment. The defendants expected, and had the right to expect, that their bonds would be paid for on delivery. The plaintiffs knew they were paying for them, and that they could not get delivery unless they did. There was no mistake between the parties themselves, for no more than was due to defendants was paid to them, and the plaintiffs knew that fact.

Under the allegations of the complaint to which the plaintiffs were held on the trial, I do not think the judgment can be sustained, and I therefore vote for a reversal.

SCOTT, J., concurs.